IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

DANIEL PEDRAZA                                                    PLAINTIFF
ADC #155040

V.                          Case No. 4:22-CV-01119-BSM-BBM

DARREN DILL, Lieutenant/Sergeant,
Arkansas Department of Corrections,
Cummins Unit                                                     DEFENDANTS

## RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to
United States District Judge Brian S. Miller. You may file written objections to all or part
of this Recommendation. If you do so, those objections must: (1) specifically explain the
factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court
within fourteen (14) days of the date of this Recommendation. If you do not file objections,
Judge Miller may adopt this Recommendation without independently reviewing all the
evidence in the record. By not objecting, you may waive the right to appeal questions of
fact.

## I.    INTRODUCTION

On November 17, 2022, Plaintiff Daniel Pedraza ("Pedraza"), a prisoner in the
Cummins Unit of the Arkansas Division of Correction ("ADC"), filed a *pro se* Complaint
under 42 U.S.C. § 1983, alleging violations of his constitutional rights. (Doc. 2). After
screening and initial summary judgment motions, there is only one claim remaining: a First
Amendment retaliation claim against Defendant Darren Dill ("Dill") in his individual

capacity. (Doc. 8; Doc. 56; Doc. 71-1 at 42:16–22). Pedraza alleges that he filed a grievance after he was attacked by a fellow inmate in the prison barbershop, and that Dill retaliated by refusing to let Pedraza return to his job at the barbershop. (Doc. 2 at 13, ¶ 3).

On February 20, 2025, Dill filed a Motion for Summary Judgment, Brief in Support, and a Statement of Facts, arguing that he is entitled to qualified immunity because Pedraza's retaliation claim fails on the merits. (Docs. 71–73). Pedraza filed a timely Response and a Statement of Disputed Facts but noted that he had not received a copy of Dill's summary judgment papers. (Docs. 78–79). The Court directed the Clerk of the Court to send Pedraza a copy of Dill's summary judgment filings and allowed Pedraza to file a supplemental response and statement of disputed facts. (Doc. 80). Pedraza filed the supplemental papers (Docs. 82–83), but still claims that he received only pages 1–4 of Dill's Brief and has not received Dill's Statement of Facts, (Doc. 82 at 3). Regardless, Pedraza admits that he received all evidence upon which Dill relies, which consists of Pedraza's deposition testimony, (Doc. 71-1), and Dill's affidavit, (Doc. 71-3). *See* (Doc. 82 at 3). And Pedraza has had ample opportunity to produce his own evidence and describe how Dill allegedly deprived him of his First Amendment rights. Moreover, Pedraza has not requested additional time or briefing.

Accordingly, the Court finds that the issues are joined and ready for review.[1] After careful examination of the record, the Court finds that Pedraza was not deprived of his First

---

[1] Because Pedraza did not receive Dill's Statement of Facts, the Court stops short of categorically deeming all of Dill's facts admitted. *See* Local Rule 56.1(c). Instead, the Court will look at the evidence to determine the material facts of this case.

Amendment rights, Dill is entitled to qualified immunity, and the Motion for Summary Judgment should be granted.[2]

## II.    FACTUAL BACKGROUND[3]

Pedraza began working in the Cummins Unit barbershop in June 2014. (Doc. 2 at 13; Doc. 71-1 at 11, 37:10–18). At the time, the barbershop was supervised by non-party Sergeant Collins. (Doc. 2 at 13; Doc. 71-1 at 11, 37:10–18). When Collins retired in 2017 or 2018, Dill took over. (Doc. 2 at 13; Doc. 71-1 at 13, 43:9–11). For three or four years, Pedraza worked under Dill in the barbershop and, occasionally, in the adjoining clothing room. (Doc. 71-1 at 12–13, 40:16–19, 43:9–17, 44:22–45:6).

According to Dill, Pedraza had daily mood swings and attitude and behavioral issues and, sometimes, would act "very angry." (Doc. 71-3 at 3, ¶ 13). Dill counseled Pedraza about his behavior and, "[a]t one point," took Pedraza out of the barbershop to work in the clothing room because of his behavior. (Doc. 71-3 at 3, ¶¶ 13–14). Dill does not elaborate any further on Pedraza's "behavioral issues" or specify any dates when these interactions occurred. *See id.*

---

[2] Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986); *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 249–50 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex,* 477 U.S. at 323. Thereafter, the nonmoving party must present specific facts demonstrating that there is a material dispute for trial by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]" Fed R. Civ. P. 56(c)(1)(A); *see Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc).

[3] These facts are sourced from Pedraza's verified Complaint, (Doc. 2); Pedraza's deposition testimony, (Doc. 71-1); and Dill's affidavit, (Doc. 71.3).

Pedraza has a different view of his time working under Dill. According to Pedraza, he never disrespected Dill and was a reliable worker. (Doc. 2 at 13). Pedraza recalls his relationship with Dill being "mainly good," with only two occasions where he and Dill disagreed. (Doc. 71-1 at 13, 44:2–5 & 45:7–9). On the first occasion, Dill came into the barbershop "hollering" about Pedraza working too slow. (Doc. 71-1 at 14, 46:16–25). Dill told Pedraza that he would give Pedraza a "job change" if Pedraza did not want to perform his job duties. (Doc. 71-1 at 14, 46:23–25). Pedraza does not recall when this interaction occurred. (Doc. 71-1 at 14, 47:1–2).

The second disagreement occurred around September or October of 2021. (Doc. 71-1 at 13, 45:10–12). On that date, Dill came into the barbershop "hollering" about all the barbershop workers' behavior. (Doc. 71-1 at 13, 45:13–22). The inmates did not understand why Dill was upset, so one inmate (not Pedraza) asked Dill why he was disrespecting them. (Doc. 71-1 at 13–14, 45:23–46:2). After that, Dill calmed down, apologized, and explained that "he was upset on some other things." (Doc. 71-1 at 14, 46:2–5).

It is within this context that the main events in this action took place. On November 3, 2021, Pedraza was working a shift in the barbershop, and Dill was supervising the barbershop and clothing room by himself. (Doc. 71-3 at 2, ¶¶ 2, 4; Doc. 71-1 at 9, 26:20–24, 27:4–10). Without any help, Dill was required to walk back and forth between the barbershop and adjoining clothing room and, periodically, to the east hall to retrieve inmates who were on the list to receive haircuts that day. (Doc. 71-1 at 9, 26:13–27:3; Doc.

71-1 at 7, 21:16–19). While Dill was out of the barbershop, Pedraza was stabbed in the neck by another inmate. (Doc. 2 at 13; Doc. 71-1 at 7–8, 21:14–22:4).

Pedraza was transferred to the hospital where he underwent surgery. (Doc. 2 at 6–7). On November 22, 2021, after returning to the Cummins Unit, Pedraza filed a grievance claiming that the ADC failed to protect him "because there was no security guard present in the Barber Shop or Clothing Room." (Doc. 2 at 28; Doc. 71-1 at 9–10, 29:6–31:24). Pedraza did not name Dill in the grievance. (Doc. 2 at 28; Doc. 71-3 at 2, ¶¶ 5–6). Nor did Pedraza discuss the grievance with Dill. (Doc. 71-1 at 15, 52:24–53:13). The grievance was ultimately denied as untimely. (Doc. 2 at 28–30).

Pedraza was on bed rest until November 26, 2021. (Doc. 71-1 at 12, 40:20–24). After he recovered from his injuries, Pedraza tried to return to his job at the barbershop. (Doc. 71-1 at 12, 40:23–41:2). First, he saw Dill in the chow hall and asked Dill if he could return to work. (Doc. 71-1 at 12, 40:23–41:2). Dill said he would "call" Pedraza for work, but he never did. (Doc. 71-1 at 12, 41:1–2).

Non-party Sergeant Lee, however, called Pedraza into work on one occasion. (Doc. 71-1 at 12, 41:3–6). But when Pedraza arrived at the barbershop, Dill asked Pedraza what he was doing there and said he did not call for Pedraza. (Doc. 71-1 at 12, 41:6–12). So, Pedraza left. (Doc. 71-1 at 12, 41:13).

On another occasion, Pedraza went to the barbershop while Dill was on leave. (Doc. 71-1 at 12, 41:13–15). Pedraza asked the supervising officer, non-party Corporal Freeman, if he could be called into work, but Freeman replied that Dill did not want Pedraza in the

barbershop. (Doc. 71-1 at 12, 41:13–17; Doc. 2 at 13). So, Pedraza stopped trying to return to work. (Doc. 71-1 at 12, 41:17–18).

On March 10, 2022, Dill asked the classification committee to reassign Pedraza to a different job. (Doc. 71-3 at 2, ¶ 9). When Pedraza appeared before the classification committee, a member asked Pedraza why Dill had asked for him to be reassigned. (Doc. 2 at 9). Pedraza responded that he did not know. *Id.* Pedraza was reassigned to work in the kitchen. (Doc. 71-1 at 12, 40:2–3).

After Pedraza's interaction with the classification committee, he decided that Dill must be retaliating against him due to the failure-to-protect grievance that he filed after the barbershop attack. (Doc. 2 at 9; *see also* Doc. 71-1 at 14–15, 49:23–50:3). So, on March 17, 2022, Pedraza filed another grievance, writing that, "there is no justification other than retaliation by Sergeant D. Dill for putting me up for a job change." (Doc. 71-1 at 15, 52:14–16; Doc. 2 at 31).

For his part, Dill claims Pedraza's November 22, 2021 grievance for failure to protect "had no bearing on [his] decision" to reassign Pedraza. (Doc. 71-3 at 3, ¶¶ 11, 18). Instead, Dill testified that his decision was "due to Mr. Pedraza's prior behavior" and for the safety of Pedraza and the other workers and inmates in the barbershop. (Doc. 71-3 at 3, ¶¶ 16–17). Dill does not elaborate on the suggested safety concerns. *See id.*

III.    DISCUSSION

Dill argues in his Motion for Summary Judgment that he is entitled to qualified immunity because Pedraza was not deprived of a constitutional right. (Doc. 72 at 7–8). Qualified immunity protects government officials from personal liability for damages

"insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To overcome the defense at the summary judgment stage, Pedraza must demonstrate: "(1) a deprivation of a constitutional right, [that was] (2) … clearly established at the time of the deprivation." *Robbins v. City of Des Moines*, 984 F.3d 673, 678 (8th Cir. 2021).

Whether qualified immunity applies to the case at hand is a question of law, not fact, for the Court to decide. *Kelsay v. Ernest*, 933 F.3d 975, 981 (8th Cir. 2019). The Court may address either inquiry first. *See Duffie v. City of Lincoln*, 834 F.3d 877, 832 (8th Cir. 2016). Dill is entitled to qualified immunity should *either* prong be decided in his favor. *Watson v. Boyd*, 2 F.4th 1106, 1112 (8th Cir. 2021) (citations omitted). The Court considers first whether Pedraza was deprived of a constitutional right, as that issue is dispositive.

To establish a First Amendment retaliation claim, Pedraza must show that: (1) he engaged in activity protected by the First Amendment; (2) Dill took an adverse action against Pedraza that would chill a prisoner of ordinary firmness from engaging in that activity; and (3) Pedraza's protected activities were the "but-for cause" of Dill's adverse action. *De Rossitte v. Correct Care Sols., LLC.*, 22 F.4th 796, 804 (8th Cir. 2022); *Santiago v. Blair*, 707 F.3d 984, 992–93 (8th Cir. 2013); *Nieves v. Bartlett*, 587 U.S. 391, 398–99 (2019). It is undisputed that Pedraza engaged in protected First Amendment activity by filing his November 22, 2021 grievance. (Doc. 72 at 3); *Gonzalez v. Bendt*, 971 F.3d 742, 744–45 (8th Cir. 2020) (citations omitted). However, Pedraza's retaliation claim fails on the other two prongs.

### A.    No Adverse Action

Pedraza alleges that Dill took an adverse action against him by refusing to let Pedraza return to work at the barbershop and putting him up for a job reassignment. (Doc. 2 at 13). It is well-established that retaliatory actions that *worsen* a prisoner's work conditions can constitute an adverse action sufficient to chill a prisoner's First Amendment activity. *Lewis v. Jacks*, 486 F.3d 1025, 1029 (8th Cir. 2007) (citation omitted). But Pedraza does not explain how his work conditions were worsened when he was reassigned to work in the kitchen.

When asked at his deposition whether he enjoyed working in the barbershop, Pedraza replied that "[i]t had its ups and downs." (Doc. 71-1 at 12, 38:16–17). And when asked why he would want to return to work in the barbershop, Pedraza simply replied that he wanted his job back.[4] (Doc. 71-1 at 16, 57:11–13). Indeed, Pedraza writes that he was "promoted to better positions in the kitchen and was ultimately assigned to work in Staff Dining." (Doc. 82 at 6). Thus, Dill's actions did not worsen Pedraza's work conditions. And there is no other discernable reason that a job reassignment from the barbershop to the kitchen would dissuade a prisoner of ordinary firmness from continuing to file grievances.

As Dill points out, Pedraza, himself, continued to file grievances. (Doc. 72 at 3). Although not dispositive, a plaintiff's own actions can be indicative of how a prisoner of

---

[4] Pedraza also noted that he wanted his room in Barracks 3 back. (Doc. 71-1 at 16, 57:11–16). Retaliatory actions that worsen a prisoner's living conditions can also constitute a sufficiently adverse action. *See Spencer v. Jackson Cnty. Mo.*, 738 F.3d 907, 911–13 (8th Cir. 2013).  But Pedraza's removal from a single-man cell in Barracks 3 to an open barracks occurred prior to the November 3, 2021 attack and, thus, had nothing to do with Pedraza's grievance of November 22, 2021, or his losing his barbershop job, (Doc. 71-1 at 16, 57:16–19; Doc. 71-1 at 7, 19:15–20:17).

ordinary firmness would react to the alleged retaliation. *Gonzalez*, 971 F.3d at 745. Pedraza admits that he continued to file grievances but argues that he "is no longer 'a person of ordinary firmness'" because of his near-death experience. (Doc. 82 at 5).  Regardless, Pedraza puts forth no evidence or argument explaining how Dill's actions would dissuade *any* prisoner from continuing to file grievances. Because there is insufficient evidence to show that being reassigned from the barbershop to the kitchen would deter a prisoner of ordinary firmness from continuing to file grievances, summary judgment is appropriate. *Gonzalez*, 971 F.3d at 745.

### B.      No Causal Connection

Summary judgment is also appropriate because Pedraza has not established a causal connection between his First Amendment activity and Dill's subsequent decision to reassign his job duties. In the prison context, "claims of unlawful retaliation must be treated with skepticism," and prisoners face a substantial burden in showing that a prison official's actions would not have occurred "but for" a retaliatory motive. *Sisneros v. Nix*, 95 F.3d 749, 752 (8th Cir. 1996); *see Beaulieu v. Ludeman*, 690 F.3d 1017, 1025 (8th Cir. 2012); *see also Atkinson v. Bohn*, 91 F.3d 1127, 1129 (8th Cir. 1996) (per curiam) (holding that speculative and conclusory allegations cannot support a retaliation claim).

Despite his alleged "behavioral issues," Pedraza worked under Dill for several years with only minor disagreements—and only one instance where Dill threatened Pedraza with a "job change." *See* (Doc. 71-1 at 14, 46:23–25). It was not until after Pedraza was attacked, and after he filed a grievance for failure to protect, that Dill asked the classification committee to reassign Pedraza to another job. So, there is at least a temporal connection

between Pedraza's November 22, 2021 grievance and Dill's refusal to let him return to the barbershop. But that is where the evidenced connection between the two events ends. "[T]his temporal proximity, *by itself*, cannot show retaliatory motive." *Skalsky v. Indep. Sch. Dist. No. 743*, 772 F.3d 1126, 1131 (8th Cir. 2014) (emphasis added); *but cf. Spencer*, 738 F.3d at 912–13 (close temporal timing was "strong evidence" of retaliation, but, in addition, the "defendants offered no nonretaliatory motive").

On the record before the Court, there is no evidence that Dill was even aware of Pedraza's November 22, 2021 grievance, let alone that it was the "but for" cause of Pedraza's reassignment. Pedraza did not name Dill in the grievance, and Pedraza never discussed the grievance with Dill. (Doc. 2 at 28; Doc. 71-3 at 2, ¶¶ 5–6; Doc. 71-1 at 15, 52:24–53:13).

Even assuming that Dill knew about the grievance, the evidence shows that he had other motivations for not allowing Pedraza to return to his barbershop job. "[A]lthough it may be dishonorable to act with an unconstitutional motive, an official's action colored by some degree of bad motive does not amount to a constitutional tort if that action would have been taken anyway." *Nieves*, 587 U.S. at 399 (cleaned up). Dill expressed his displeasure at Pedraza's work pace and threatened to have him reassigned *prior* to the grievance. (Doc. 71-1 at 14, 46:16–25). Moreover, Pedraza was stabbed in the neck while working in the often-unsupervised barbershop which, by its very nature, is full of sharp instruments. Although Dill does not elaborate on his "safety" reasons for not letting Pedraza return to the barbershop, *see* (Doc. 71-3 at 3, ¶¶ 16–17), one does not have to

stretch the imagination to conclude that placing a stabbing victim back in the environment where he was stabbed could create safety issues.

Ultimately, the burden was on Pedraza to come forward with evidence that his grievance was the "but for" cause of his removal from the barbershop, but he failed to meet this heavy burden. Accordingly, summary judgment is also appropriate on the causal-connection prong of Pedraza's retaliation claim.

## IV.    CONCLUSION

Pedraza claims that he was reassigned from his barbershop position because he filed a grievance against the barbershop supervisor, Dill. But Pedraza does not show that his reassignment to a kitchen position would dissuade a prisoner of ordinary firmness from filing a grievance. Nor does Pedraza show that he would not have been reassigned but for his filing of the grievance. Thus, Pedraza has not shown that he was deprived of a First Amendment right, and Dill is entitled to qualified immunity.

IT IS THEREFORE RECOMMENDED THAT:

1.    Dill's Motion for Summary Judgment, (Doc. 71), be GRANTED.

2.    Pedraza's First Amendment retaliation claim against Dill in his individual capacity be dismissed with prejudice.

3.    Judgment be entered accordingly.[5]

DATED this 17th day of June, 2025.

UNITED STATES MAGISTRATE JUDGE

---

[5] All other claims were dismissed without prejudice. (Docs. 8, 56).